# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GARY ALBERT, ET AL | CIVIL ACTION |
| VERSUS | NO. 04-1611 |
| PEAVEY CO. n/k/a CONAGRA FOODS, INC. | SECTION "C" (3) |

### ORDER AND REASONS[1]

Before the Court is defendant ConAgra Foods Inc.'s Motion for Summary Judgment Based on the Louisiana Right to Farm Law. (Rec. Doc. 80). This removed class action nuisance suit arises from the alleged tortious operation of the defendant's grain elevators. The class claims that the defendant operated its facility in a manner that allows fugitive dust emissions to settle on class property constituting an actionable nuisance. The defendant argues that it is shielded from liability by the Right to Farm Law outlined in La. Rev. Stat.§ 3:3603 et seq. Discovery regarding the Right to Farm Law is closed and the defendant now moves for summary judgment. Based on the memoranda and evidence submitted by the parties, the parties' oral argument, the record in this case and the applicable law, the Motion for Summary Judgment is GRANTED.

## I. LAW AND ARGUMENTS OF PARTIES

Louisiana's Right to Farm Law at the time of the alleged nuisances provided in pertinent

---

[1] Tommy Cantrell, a third-year law student at Loyola University, assisted in the preparation of this opinion.

1

part,

> A. The legislature hereby declares that persons who are engaged in agricultural operations in accordance with generally accepted agricultural practices should be protected from legal actions brought by persons who subsequently acquire an interest in any land in the vicinity of the agricultural operation...
>
> B. No agricultural operation shall be deemed to be a nuisance in any action brought under the provisions of Civil Code Article 669, R.S. § 33 R.S. 40:14, or any other grant of authority authorizing the suppression or regulation of public or private nuisances if:
>
>   1. The agricultural operation is conducted in accordance with generally accepted agricultural practices; and
>
>   2. Either:
>   > A) The person bringing the action acquired the interest in the land or improvements alleged to be affected by the nuisance after the date on which an agricultural operation was in existence; or
>   > B) The agricultural operation was established prior to any change in the character of the property in the vicinity of the agricultural operation.

La. Rev. Stat. § 3:3603 (hereinafter "Right to Farm Law"). Generally accepted agricultural practices is defined in the act as:

> [P]ractices conducted in a manner consistent with proper and accepted customs and standards as established and followed by similar agricultural operations in a similar community or locale and under similar circumstances.

La. Rev. Stat. § 3:3603(9).[2] Relying on these provisions, the defendant asserts that summary judgment is appropriate because the plaintiff has failed to offer evidence of generally accepted

---

[2] The statute has since been amended and Generally Accepted Agricultural Practices is now defined under La. Rev. Stat. § 3:3603(12).

2

agricultural practices. Defendant contends that without this evidence a trier of fact lacks the proper framework to compare the grain emissions of the defendant. Defendant asserts that without this standard to judge the activity of the defendant, a trier of fact would be unable to find a breach.

The plaintiff responds first, by noting that Peavey has received three citations from the State of Louisiana as a result of alleged emission violations; second, by citing to testimonial evidence of damage allegedly resulting from the grain operation; third, by complaining at oral argument about Peavey's record keeping habits, particularly the inaccessibility of records that might establish generally accepted agricultural practices; and fourth by alluding to the notion that the defendant carries the burden of proving that it was in conformity with generally accepted agricultural practices. Essentially, the plaintiff argues that evidence of damage suffered by class members, the various environmental citations received by the defendant, and the lack of records in the Peavey facility, is sufficient to demonstrate a violation of generally accepted agricultural practices.

## II. ANALYSIS

The relevant issues appear to be: 1) Under the Louisiana Right to Farm Law, who bears the burden of establishing the "generally accepted agricultural practices" and what evidence is required to show a breach of that standard; 2) Under the Louisiana Right to Farm Law, to what extent, if at all, are Louisiana environmental laws and regulations relevant to the determination of "generally accepted agricultural practices;" 3) Under the Louisiana Right to Farm Law, to what extent may lay testimony establish generally accepted practices or establish a breach of generally accepted practices; 4) Under the Louisiana Right to Farm Law, if a defendant acts contrary to generally accepted

agricultural practices by failing to keep records that might evidence generally accepted practices, may that same defendant then complain that the plaintiff has failed to establish generally accepted agricultural practices.

**1) Under the Louisiana Right to Farm Law, who bears the burden of establishing the "generally accepted agricultural practices" and what evidence is required to show a breach of that standard?**

The defendant argues that the plaintiff bears the burden of establishing generally accepted agricultural practices. Def. Suppl. Mem. Mot. Summ. J. at 3. Defendant further argues that the failure to require the plaintiff to bear the burden would eviscerate the protections of the Right to Farm Law. Id. Defendant concludes that because the plaintiff did not examine other grain operators in the region and elicit their testimony in support of the class's cause of action, his claim must be dismissed for failure to create a material issue of fact with regard to the alleged breach of the generally accepted practices. Id. at 4.

The plaintiff responds by citing to various depositions of the class in which the members testify to the extent of the alleged damage; by referencing the alleged environmental citations received by Peavey; by alluding to the notion that the defendant's carry the burden of proving compliance with generally accepted practices and by stating in oral arguments that there is no industry standard to judge the activity of the defendant. Pl's. Mem. Opp'n Summ. J. at 2-7. Plaintiff concludes that with all of this evidence the jury could find that Peavey was not in compliance with generally accepted agricultural practices whatever those practices might be. Id.

No Louisiana court has provided direct guidance with regard to who bears the burden of

establishing "generally accepted practices" as outlined in the Louisiana Right to Farm Law. However, pursuant to La. Rev. Stat. § 3:3604 whereby "[e]ach person engaged in agricultural operation [is] presumed to be operating in accordance with generally accepted agricultural practices" a court would likely conclude that the burden falls squarely upon the plaintiff. Regardless of this statutory presumption, both the Right to Farm Law and Louisiana's jurisprudence in analogous circumstances indicate that the burden is on the plaintiff to prove a deviation from generally accepted agricultural practices.

The plain language of the statute leads to some inescapable conclusions. A defendant can only be held liable if two of three elements are proven: first, that the operation was not conducted in accordance with generally accepted agricultural practices; and second that the person bringing the action acquired the interest in the land or improvements alleged to be affected by the nuisance before the date on which an agricultural operation was in existence; or the agricultural operation was not established prior to any change in the character of the property in the vicinity of the agricultural operation. Per this explicit language, a plaintiff's claim should not survive if the plaintiff cannot prove that the activity of the defendant is contrary to generally accepted agricultural practices.

The Court could find no Louisiana case that addressed who carries the burden of proof under the Louisiana Right to Farm Law. However, Louisiana courts have had the opportunity to pass on the question of burden in similar situations. More particularly, Louisiana courts have addressed situations involving professional conduct. Much like the Right to Farm Law's requirement that an agricultural nuisance be judged by "generally accepted agricultural practices in a similar community or locale and under similar circumstances," professionals are likewise held to a "local standard" of

conduct. Compare La. Rev. Stat. § 3:3602(9) with La. Rev. Stat. § 9:2794. Because the standards are similar, an analysis of Louisiana jurisprudence regarding the burden required of a plaintiff that alleges professional misconduct may provide pertinent guiding principles.

In the matter of <u>Calandaro Development, Inc. v. R.M. Butler Contractors, Inc.</u>, 249 So.2d 254 (La. App. 1971), the Louisiana Court of Appeals for the First Circuit was called on to decide whether the surety of a defaulting contractor could bring a cause of action against an engineer who agreed to, but failed to supervise the contractor. There, the court held that the plaintiff (the surety) must establish the degree of care and skill required by local standards of the engineer. <u>Id.</u> at 265. Ultimately, the court dismissed the plaintiff's claim for failing to establish the degree of professional care and skill demanded of the defendant. <u>Id.</u> at 266.

The <u>Calandaro</u> holding was based on language used by the Louisiana Fourth Circuit in the matter of <u>Malony v. Oak Builders, Inc.</u>, 224 So.2d 161 (La. App. 1969) (rev'd on other grounds). In that case, the court addressed an architectural malpractice claim and was called on to address the burden required of the plaintiff and the consequences of failing to meet that burden. Writing for the court, Judge Regan held,

> A careful analysis of the testimony...discloses that the plaintiffs failed to establish the local prevailing standards for architectural competence, and in view of this omission it was quite impossible for the lower court as it is for us, to judge the performance of Mrs. Moss. In other (sic) to disclose any negligence involving malpractice, it is necessary to establish the breach of a duty. Since the duty was not established, it logically follows that there can be no conclusion as to a breach thereof.

<u>Id.</u> at 169.

With these principles in mind, it is likely that a Louisiana court interpreting the Right to Farm Law would find that the burden of establishing and proving generally accepted practices falls on the plaintiff. Again, it should be reiterated that the duty owed in <u>Calandaro</u> and <u>Malony</u> derives from a professional standard while the duty in this case arises out of tort. Both standards of conduct, however, are judged by a local standard. Moreover because a statutory presumption exists that agricultural practices are in compliance with generally accepted practices and because no language in the Right to Farm Law suggests that the burden should be carried by the defendant, a Louisiana court would likely follow the <u>Calandaro</u> line of cases and hold the burden of proving the standard of conduct falls upon the plaintiff.

**2) Under the Louisiana Right to Farm Law, to what extent, if at all, are Louisiana environmental laws and regulations relevant to the determination of generally accepted agricultural practices?**

The plaintiff claims that the violations noted by the Louisiana Department of Environmental Quality are enough for a jury to conclude that the defendant's operation was not in compliance with generally accepted agricultural practices. In essence, he asks that environmental citations are evidence enough such that a trier of fact could conclude that the defendant deviated from the standard of generally accepted agricultural practices.

Louisiana courts have not addressed the issue of generally accepted agricultural practices in any case. Moreover, they have not addressed to what extent, if at all, Louisiana environmental laws and regulations are relevant to the determination of generally accepted agricultural practices.

Essentially, given the facts of this case, a court must determine whether a violation of Louisiana state law or regulation is pertinent to the determination of generally accepted agricultural practices and if so to what extent. In other words, a court must decide whether an agricultural practice may operate outside the law of Louisiana and at the same time within generally accepted agricultural practices.

As stated above, no case directly addresses this issue. However, Louisiana has addressed the relevance given to a violation of other Louisiana laws with regards to judging civil liability. In <u>Pierre v. Allstate Ins. Co.</u>, the Louisiana Supreme Court directly stated that:

> Criminal statutes are not, in and of themselves, definitive of civil liability. They are, however, guidelines to which a court may resort to establish the proper standard of care for assigning civil liability. Criminal statutes do not set forth the Civil rule; it is the court which by analogy must determine whether the statutes can define the rule to be applied in civil cases.

242 So.2d 821, 829 (La. 1971). In the case of <u>Laird v. Travelers Ins. Co.</u>, 267 So.2d 714 (La. 1972), the Louisiana Supreme Court further explained the axiomatic rule for per se civil liability holding that a criminal violation leads to civil responsibility only if that act is the legal cause of the damage to another. <u>Laird</u>, 267 So.2d at 716. Legal cause is determined under a risk/duty analysis that inquires into: whether the violation of a criminal statute is the cause-in-fact of the harm; the nature of the duty imposed; whether the duty was breached; and considers the risks encompassing the duty. <u>State Farm Mut. Auto. Ins. Co. v. LeRouge</u>, 2008 WL 4890885, (La. App. 4 Cir. 11/12/2008); <u>Laird</u>, 267 So.2d 714.

Pursuant to <u>Pierre</u>, a court may, considering the facts of this case, draw guidelines from the environmental regulations, and establish the standard of care to be impugned on an agricultural

8

practice. In this regard, a court would likely conclude that the emissions standards outlined by the LDEQ are to protect the public and environment from pollutants and toxins that cause harm. At the very least, Louisiana courts have found that violations of criminal statutes may be pertinent to establishing a standard of care.

However, in order to establish a per se violation a court must apply the analysis outlined in Laird and LeRouge. Cause-in-fact exists if the violation is a necessary ingredient or is more probable than not a substantial factor in the harmed caused. Laird, 267 So.2d at 716. Here, a violation of environmental regulations could readily result in the settling of dust onto the class' property. However, a question of fact remains as to the determination of whether the dust would have settled on the class' property absent a violation of environmental standards. If the dust would settle on the class' property even when the grain operation is in compliance with LDEQ, the cause-in-fact may be rebutted.

The next element employed by Laird and LeRouge requires a determination of the existence and nature of a duty. See LeRouge, 2008 WL 4890885; see also Laird, 267 So.2d at 716. Here, the duty imposed on the defendant is to control the emissions of the dust, the nature of which is presumably for both health and environmental concerns. Moreover, pursuant to the Right to Farm Law, an agricultural practice cannot be held liable for a nuisance if it is operating under generally accepted agricultural practices. Accordingly, it can be inferred that the defendant owed a duty to operate its facility within generally accepted agricultural practices or otherwise be subjected to possible nuisance actions.

The third element requires a court to determine the risks that encompass the duty. Laird, 267

9

So.2d at 716. Here, the risks of allowing excessive emissions to escape the grain operations might pose a hazard to the environment and to the health of adjacent properties and inhabitants.

The final determination evaluates whether the owed duty was breached. LeRouge, 2008 WL 4890885. While it is true, that the defendant in this case was cited by the LDEQ, no finding of an actual violation was established. Peavey points out that it only received a citation and that the conclusions of the citations did not result in any admission of liability, but rather settled in the interests of expense. Furthermore, an occasional lapse or breach of environmental standards does not mean that the grain elevator did not operate according to generally accepted agricultural practices.

With all of this in mind, a Louisiana court would likely determine that where the plaintiff has failed to establish what the generally accepted agricultural practices are in the area, in the first place, neither the Court nor the jury has a basis for determining if a breach of environmental laws on an occasional basis, even if proven, would constitute a sufficient violation of those practices to find liability.

**3) Under the Louisiana Right to Farm Law, to what extent may lay testimony establish generally accepted practices or establish a breach of generally accepted practices?**

This case does not deal with the actions of a professional. Yet the right to Farm Law requires a standard of conduct similar to the "local" standard required of a professional; a standard of "generally accepted agricultural practices." Louisiana courts have had numerous opportunities to elaborate on the type of evidence required to establish the local standard of professionals and a breach thereof, and because the state courts have not addressed the Right to Farm Law in this regard, a

discussion of the professional cases provides some guiding principles.

Professional malpractice is generally judged by the local standards of the profession. See Raburn & Associates v. Burgundy Oaks L.L.C., 875 So.2d 119, (La. App. 2 Cir. 5/20/04); Magee v. Pittman, 761 So.2d 731, (La. App. 1 Cir. 2000); La. Rev. Stat. Ann. § 9: 2794. In Louisiana, when a plaintiff brings a cause of action asserting a breach of a local standard, a trier of fact must be supplied with the local standard with which to judge the alleged breach. Calandaro, 249 So.2d 254. Generally, this local standard must be established by the testimony of an expert witness familiar with the local standards. Herpin v. Witherspoon, 664 So.2d 515, (La. App. 3 Cir., 11/02/95). The general principle behind this rule is that the subject matter of professions are often too technical and complex for a layperson to understand, let alone pass judgment on the existence of a breach. 19 La. Civ. L. Treatise, Evidence And Proof § 11.3 (2008). In sum, a lay person, alone, is normally ill-equipped to analyze the complex duties required of a professional.

Circumstances exist, however, where Louisiana courts will not require the testimony of an expert testimony. Where a court concludes that the alleged act of the professional involves obvious carelessness, expert testimony will not be required to establish the local standard of care or a breach thereof. See Hastings v. Baton Rouge General Hosp., 498 So.2d 713 (La. 1986); (finding the amputation of the wrong limb, prescription of inappropriate medication or leaving a surgical sponge in a body are cases not requiring expert testimony as to the standard of care or negligence); see also Pfiffner v. Correa, 643 So.2d 1228 (La. 1994). The Louisiana Supreme Court has said that the issue fails to be obvious carelessness when it is beyond the province of the layperson to assess. Pfiffner, 643 So.2d at 1234.

With these principles in mind, a court should determine whether the alleged actions of the defendant involve conduct that is obviously careless beyond the province of a layperson's ability to judge. If obvious carelessness is found, the testimony of the class members will be sufficient to establish both the conduct required of the agricultural industry as well as the existence of a breach. If a court determines that the conduct does not exhibit obvious carelessness because a layperson would not be equipped to judge the alleged infraction, then expert testimony will be required to establish the standard of conduct and a breach thereof.

Here, class members have testified to several incidents of alleged damage that might support a finding of obvious carelessness. Of some note is the testimony of Bonnie Poche who testified that she could wash her dark green vehicle in the afternoon and wake up the next morning to it being covered with white dust. See Dep. Poche at 20. Mrs. Poche also testified that you could see a white cloud of dust emanating from the Peavey facility and actually see it approaching her property. Id. at 27.

However, the ability to judge excessive dust emissions may be beyond the province of a normal layperson. According to the deposition of James Manness, when the Environmental Protection Agency makes a determination regarding excessive dust emissions, it does so visually. See Dep. Manness at 70. Once the dust emissions visually exceed twenty percent, the emissions are considered excessive. Id. The significance of this analysis hinges on two assumptions: first that the twenty percent standard required by the EPA is at or below the generally accepted practices of the agricultural industry and that the amount of dusting experienced by Mrs. Poche or other class members would not occur if the emissions were below twenty percent. Again, without evidence of

what the accepted practices are, determining if those standards are violated is impossible.

**4) Under the Louisiana Right to Farm Law, if a defendant fails to keep records pertinent to its compliance with state law and generally accepted practices, may that same defendant then complain that the plaintiff has failed to establish generally accepted agricultural practices?**

The plaintiff's assertion at oral argument that he is unable to establish the standard of generally accepted agricultural practices due to the defendant's failure to maintain emission records hints to an defense of equitable estoppel. The Court found no case addressing the pertinence of a defendant's failure to maintain records with regard to the determination that a defendant is estopped from taking advantage of the plaintiff's failure to make such a showing.

Without any precedential guidance, the Court finds the plaintiff's equitable estoppel argument unpersuasive. The plaintiff could have established the generally accepted practices from other sources i.e. by retaining an expert who could scrutinize the testimony of the class members and extrapolate a conclusion in regards to both generally accepted agricultural practices and a breach thereof. The plaintiff could have also interviewed others who have worked in a similar grain operating business in the area who could have likewise scrutinized the testimony of the class. The plaintiff did none of these. If the plaintiff in this case was only able to ascertain the generally accepted industry practices from the records of the defendant, then the estoppel argument might be viewed in a different light. In conclusion, the defendant should not be punished for failure to maintain records while the plaintiff is rewarded for less than diligent discovery practices.

**III. CONCLUSION**

Accordingly,

IT IS ORDERED that ConAgra Foods Inc.'s Motion for Summary Judgment Based on the Louisiana Right to Farm Law. (Rec. Doc. 80) is GRANTED.

New Orleans, Louisiana this 6th day of February, 2009.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**